Good afternoon. The case this afternoon is No. 07-1115, Acumed v. Stryker. Mr. Vickery. May it please the Court. My name is Paul Vickery. I represent Acumed. With me is Frederick Laney, my partner. I want to briefly recount what's transpired in sprawling litigation since the briefing of this particular issue. The Federal Circuit affirmed the judgment of willful infringement in the main case, remanded the case to the District Court for determination as to whether a permanent injunction would be appropriate under the eBay standard. That case is not before us, is it? Well, there had been some discussion in Stryker's brief about other things that were going on, including a re-exam instituted by Smith and Nephew, and his survived re-exam completely intact. Turning to the facts that led Acumed to what we believe was a Hobson's choice back in August of 2005, Acumed sued Stryker in April of 2004 for infringement of the 444 patent. At the time, the long nail did not exist. In the course of discovery, Acumed learned that Stryker had set out on a course to eliminate Acumed from the market. It also learned that Stryker was in the process of developing a long nail, same nail but a longer version, in Germany. And one of the motivations of that was because Acumed itself had such a long nail in its product line. Again, the goal was to eliminate Acumed from the market. Discovery closed in December of 2004. Fact discovery closed. Expert discovery closed in March of 2005. At no time, it turned out that in April of 2005, Stryker launched its long nail version into the United States market in April. At no time did Stryker supplement its prior discovery, and when Acumed Council started inquiring about it in the summer of 2005, whether or not the long nail had been launched, there was no response. Finally, in response to several more letters, in mid-August of 2005, approximately a month before trial, Acumed and Stryker announced in a letter that the long nail was not part of the case. Acumed Council immediately called Stryker Council and was told, that's not part of this case, it's for another case. Acumed immediately made a motion to compel, and in responding to the motion to compel, Stryker made a number of comments, which are set out on page 7 of our opening brief. I won't quote them all, but they represented to the court that the T2 long is not an accused product. There have been no amendments to the pleadings to bring the T2 long into the case. There have been no discovery, there have been no expert reports, damages, liability issues, and the list goes on and on. Mr. Vickery, you have a very short, limited time period before us, so I think that's all part of the record. You can assume that we've read the record and we're familiar with it. I think you should get right to the legal issue as to where the lower court went wrong and made reversible error in your, so that you can have another bite at the apple. I'll do that right away. In dismissing Acumed's second complaint over the long nail, the district court specifically rejected Acumed's position that Foster v. Halco and other authority mandated that the party asserting claim preclusion had the burden to establish that the two devices were essentially the same. And it did so very forcefully. We had maintained that you have to make that determination, and either way the claim couldn't be precluded, because if it were essentially the same, then it could be the subject of a contempt proceeding, and if it were not essentially the same, obviously the new claim would not be barred. And what the court said about that goes to the heart of the appeal, and that's at A12. The district court stated, Foster, as a result, does not compel defendants in this case to establish that the T2PHN and the T2 long are essentially the same in order to raise a race to the count of defense. Defendants need only show that the T2 long infringement claim could have been raised in the prior action. We submit that that is an incorrect statement of the law, because under this court's precedent, Foster v. Halco, the young engineer's case, the item one in the determination is a review of the infringing items themselves. And to conflate the test into whether something could have been litigated is contrary to that precedent, and it also is inconsistent with the Ninth Circuit's statement of that particular issue. Is it the question here not whether it could have been brought, but whether, as sort of a threshold inquiry, whether the action arises from the same transactional nucleus of facts? Precisely, Your Honor, and it's our position that that inquiry stems from a review of the infringing items themselves, or the accused devices themselves. And even if we were not to even consider Foster v. Halco, young engineering, and strictly looked at Ninth Circuit law, as we pointed out, in the Hell's Canyon preservation case, the Ninth Circuit said, quote, we know briefly that courts have not always been clear that the phrase claims that were raised or could have been raised refers to legal theories arising out of the same transactional nucleus of facts, rather than two distinct causes of action. So we don't get back to the, what is the central issue here? What is the transactional nucleus of facts? And we submit to you that in a patent case, it is error not to consider whether the two devices, the two claims, the two devices are essentially the same. Well, even in our Foster cases, did we not decide it was Ninth Circuit law? That was an interpretation of Ninth Circuit law. Your Honor, the Federal Circuit did indeed look at Ninth Circuit law and determined that there was no difference between Ninth Circuit law on this issue and Federal Circuit law on this issue, because they both arise out of, they both apply the restatement approach. But which applies? Ninth Circuit law in this case, or Federal Circuit law? We would submit that because this particular issue on claim conclusion derives from whether something, whether the two infringement claims are identical or substantially the same, for that aspect, I believe that the court would follow Foster v. Halco and Young Engineering because the Ninth Circuit really hasn't addressed that specific issue. But even under the restatement approach, it's important to look at those factors, and I believe, just briefly, the factors under Section 24-2 of the restatement are the claims related to time-space motivation. One came out something like a year and three months after the other one, and the supposed motivation, according to Stryker, was to treat slightly different fractions. Did they conform to a convenient trial unit? Stryker represented no and vociferously protested that they couldn't be a convenient trial unit for that trial schedule. The court agreed. Would their treatment as a unit conform to the party's expectations? Again, according to Stryker, absolutely not, because it thought that supposedly it didn't have to even supplement its discovery because this wasn't even in the case. At least that's what their stated reason for not supplementing under Rule 26. And finally, I would also point out that even in this appeal, Stryker has conceded its position that, after addressing our argument as to whether they should have been judicially stopped or even raised a judicial stop order, here's what they said at page 52 of their brief. Stryker has repeatedly explained that the T2 law introduces non-infringement defenses that were not available with respect to the T2PHN and thus cannot be essentially the same under fostering. So Stryker comes into this court and says, and concedes, tells the court they can't be essentially the same. For all of these reasons, we respectfully submit that the district court's decision should be reversed. Thank you, Mr. Vickers. Ms. Wayne? Good afternoon. May it please the court, my name is Sharon Wayne and I'm here on behalf of the Stryker appellees. In our view, this case involves a straightforward application of res judicata. Res judicata prohibits lawsuits on any claims that were raised or could have been raised in a prior action. In this case, there can be no dispute that Acumen could have and actually did raise the T2 long claim in connection with the earlier lawsuit. If they arose out of the same transactional nucleus, right? That's exactly right. And when you're analyzing the transactional nucleus of the facts, what you need to look at is what the restatement defines transactional nucleus of the facts is meaning a related grouping of facts that form a convenient trial unit. It's not just one fact. You don't just look at the facts. In fact, it's our contention that the Foster versus Helco case does not apply here. The Foster versus Helco case was a use of res judicata to obtain an actual substantive determination of liability. That's not what we're asking for here. Here, Stryker has used res judicata as a procedural bar to the T2 long claim because it could have been litigated earlier. Is that the test though? Is that could have been litigated? Could have been litigated has always been one of the prongs of res judicata. It either already was raised or it could have been litigated earlier. But that only arises after there's some determination that it relates to the same jurisdictional nucleus of facts. That's exactly right. So that's the question. Is this the same transactional nucleus of facts? And if you look at your own opposition to Acumen's motion for entry of permanent injunction, page 8, 0077, when you lay out quite clearly there that the T2 long is more than colorably different, significantly longer. Stryker goes on to talk about different questions of application of the claims, different questions of fact relating to infringement, not to mention differences obviously with respect to damages. How can you say this is the same transactional nucleus of fact when it's a different product with different infringement questions? There are some different infringement questions that are raised, but Stryker has always taken the position that any of the non-infringement defenses, if we have been successful below, those same non-infringement defenses would have applied with respect to the T2 long as well. But are you then saying that because infringement was found below, that this modified device by definition, if we accept your position that they're the same, is also infringing and that ends it? Well, I think that's where the source of confusion is here. The Foster case and what Acumen is basically arguing, when you're looking at essentially the same test, what you're looking at is you're basically trying to, I guess, shortcut having any kind of trial and instead basing a determination of liability or non-liability simply on the fact that an earlier product was found to be liable or not liable. In Foster, the second device that was at issue didn't even exist until four years after that consent judgment. So there was no could have litigated issue there because that could not have been litigated. It didn't exist. But again, you're jumping over the question of whether they're the same transactional nucleus of fact. What difference does it make whether it could or could not have, was or was not in existence if there is a different transactional nucleus of fact? Well, I think when you look at the transactional nucleus of the facts, you can look at it in two ways in our view. You can compare the T2 Long claim that was brought in the second lawsuit with the T2 Long claim that was brought in the first lawsuit. And if you look at it from that standpoint, they're identical. The claims are identical. Everything that was needed to litigate the T2 Long was there in the earlier lawsuit. It just, Acumen decided they weren't going to litigate. You can also look at it as… Wait a second. You say everything was there. What do you mean everything was there? There are different questions relating to how the claims would read on the different structures. These are the things you point out in your opposition. That is true. And I don't believe that our position is inconsistent because there was fact discovery on the T2 Long and Acumen represented that it was ready to go based on the evidence that they had there. We objected because it was one month before trial and we were aware that the T2 Long brought in additional non-infringement defenses to the case and possibly changed the marketplace considerations. So we were objecting that at the very last minute something was being brought in without experts having had the opportunity to opine on that. That doesn't mean that there's not the same transactional nucleus of facts. In fact, in our brief and also… What are they? Can you tell us what they are? Well, transactional nucleus of facts, when you're looking at it, the restatement says you have to look at it pragmatically and you have to look at whether the related facts… I'm sorry, if the facts are related in time, space, and origin, and whether they form a convenient trial unit. When you're examining the time, space, and origin, here we have a situation where the T2 Long and the T2 proximal here were developed by the same group of people. Are you saying the evidence of infringement was the same? In your brief on this appeal, you make a strong statement at the end of the brief, lest the point be lost, that these are different devices that do not infringe and that given the opportunity, you would so demonstrate. And yet I hear you telling us that everything is the same and they should have been tried together and no further discovery was needed and no further argument and no additional… all of the things that, according to the record, were raised on behalf of your client to avoid having this issue included in the trial. I think that there's a little bit of confusion here between essentially the same test that's used in Foster versus the transactional nucleus of the facts. When you're looking at the transactional… No, I don't think there's any confusion. I think the confusion is the divergence in the positions that's being taken for different purposes, all of which I can appreciate, but we're trying to get you to focus a little bit more clearly than in generalizations as to why, despite your arguments to the district court that these issues should not be trialed, tried together, should not have been tried at the time, but it would have required another year of preparation. Nonetheless, they should now be prohibited from proceeding according to the path, the groundwork for which you set. Okay. First, when we're talking about the time, space, and origin, it's not just looking at the products. Of course, it's important to look at the products themselves and to determine, do they form a convenient trial unit? Striker never took the position that they don't form a convenient trial unit. We took the position that they didn't. It was not convenient to try both of them together at that time. That doesn't mean, just because there was going to be a delay of potentially a year, that doesn't mean that there is no longer a convenient trial unit. But the district court accepted your position, and now you say that because of that, there should be all of these, I don't want to say unforeseen consequences, because my guess is that they were not unforeseeable, but they certainly are not the most direct consequence. We did not take the position in front of the district court. The district court did not have to reach the question of whether or not the T2 long was essentially the same or not, because the district court could have litigated and examined the transactional nucleus of the facts and decided that the T2 long and the T2 proximal humeral now did indeed form a convenient trial unit. So there wasn't, although Acumed has taken the position that the district court agreed with Striker, the district court actually agreed with Acumed and said, you know what, yeah, I think that you should try these cases together, and in fact, I know you guys don't want to have two separate cases on substantially the same issues. The only thing that she disagreed with Acumed on was that they were not going to be able to just bring in the T2 long without somewhat of a delay, because at that point, we had already submitted the pretrial order, and she was viewing what their motion to compel was as a motion to amend the pretrial order. And so there was necessarily going to be a little bit of delay because the parties would have to amend the pretrial order to include an additional product. But I gather that you said there'd have to be damages discovery, there'd have to be all sorts of things that the court mentioned a year, perhaps, and even that was a tight schedule. Well, the district court said she didn't say that there was going to be definitely a one-year delay. She said that it could be up to a one-year delay because one of Acumed's counsel asked how long the delay would be, and she said it would depend on what type of discovery was needed, but right now, if a new case was filed in my court, it would be a year. And that kind of has taken a life of its own there. But there wasn't really ever a determination made because Acumed withdrew their claim before it got to that point. Well, are you saying it could have been just a couple of months? I'm not sure. I don't know if I could say that because I don't know the documents. But it's possible. I'm not sure what the delay would have been, Your Honor, because that would have been something that was up to the district court, and again, it didn't reach that point because they withdrew. You're asking us or saying it's appropriately put on these various circumstances. Okay. I don't know if I can answer that particular question because I just don't know, except for there were additional non-infringement defenses that were raised by the T2 law, and that is for sure. The problem is if what Acumed has done is they're putting us in a position where if we want to raise res judicata, then we're basically raising it against ourselves. So that if we have to show that something's essentially the same, then what we're saying is that the T2 law infringes, which is not at all our position. So what they're doing is basically taking could have litigated out of their res judicata test, and that's always been part of res judicata. It's got a long established history with the Supreme Court, and there's no precedent out there that would suggest that in a patent case that could have litigated is not an option. Here, the whole point of res judicata is to get rid of needless litigation or litigation that could have been brought earlier, and there is no dispute that Acumed could have brought the T2 long claim in the earlier lawsuit. They just chose unilaterally not to. Are you saying that Foster does not follow Supreme Court law? I'm saying that Foster actually doesn't apply in this particular case because we don't need to get to Foster because we have a could have litigated situation. So we're not saying that we're looking for a finding of liability or non-liability based on the earlier case. Nobody's asking for that. We're simply using res judicata as a procedural bar as is, I think, usually what is done. Foster uses res judicata as a substantive bar of liability by saying that essentially the second product was litigated because it's essentially the same as the first product that was litigated. If Foster does apply, then you lose? Well, Foster really doesn't apply. That's the problem. If Foster does apply, do you lose? I don't think so because Foster is not inconsistent. It just doesn't apply to this particular set of facts because we're not asking for a determination of liability or non-liability. Foster actually sets forth that a claim means a set of related facts. It also talks about how an essential fact is to look at the physical characteristics of the device. That's one of the factors. Which the lower court never did, right? I'm sorry? The lower court never did that. The lower court looked at whether or not there was a set of related facts that would form a convenient trial unit. That's what the test is in the Ninth Circuit, and that's what the federal circuit has used in previous cases as well, such as United Technologies versus Cromalloy. Even in the Del Mar decision, there was some dicta that would indicate that if, during the course of the patent litigation, a party becomes aware of a second device, they are expected to go ahead and litigate that case. No matter how different that second device might be? No. See, I think always, even in a could-have-litigated situation, you do go back to the transactional nucleus of the facts test. But it's important to understand exactly what that means. And under the restatement, the transactional nucleus of the facts, that connotes a related grouping of facts that form a convenient trial unit. It doesn't connote just one fact. It doesn't mean you're only looking at one thing, what the characteristics of the products are. Certainly, that is something that should be taken into consideration. So if they became aware during our case of some Engel product, for example, then that would be something that maybe could have been litigated, but there wouldn't be a restitutacata bar, because there wouldn't be a shared transactional nucleus of the facts. Here, we're talking about two nails that are the same family of nails, they're proximal humeral nails. The T2 long was already under development at the time that Acumen filed its initial case, so it wasn't like that was an add-on product that Stryker was making because they were afraid of finding infringement or anything like that. There was no funny business going on. That was already under development, and then they had the opportunity for discovery and did discover what that T2 long product was going to look like. But the T2 long product also would introduce other non-infringement type of defenses. That's absolutely true. So it's not the same type of a product under Foster. I don't think that's necessarily—well, under Foster, that is correct. Thank you. Any questions for Ms. White? No. Thank you, Ms. White. Thank you. Mr. Vickery? Yes, briefly. The whole point is that the district court cannot avoid looking at the infringing devices, comparing the devices, and just say, well, it could have been litigated. That misinterprets not only this court's precedent but also the Ninth Circuit precedent. It's not that simple. You can't avoid the inquiry as to whether—what the transactional nucleus effect is. And I bring the court back to April of 2005 because had they had Stryker—Stryker now maintains that it's the same nucleus effect. Well, if that's the case, then why didn't they supplement? Why didn't they raise their hand and say, well, okay, it's on the market now. At that point, we have five months or six months before trial, five months. And then we can argue about, you know, get some damage discovery or somebody wants to supplement an opinion as to whether or not it infringes. The court could handle that. But it elected to be quiet about it. And I also bring up the fact that the restatement does look at some subjective thoughts of the parties. Is it within the party's expectations that this is going to be a convenient trial unit? Well, obviously, obviously, at the time, Stryker didn't believe so, and that's giving them the benefit of the doubt. We also maintain that Foster was not an aberration. And in the Young Engineers case, for example, this court stated, quote, as the proponent of the defense of claim preclusion, the burden was on TYE to establish a defense by showing that the devices were the same as those in the 1969 suit. There has to be some sort of analysis. That's all I have. Any questions for Mr. Vickrey? Thank you, Mr. Vickrey and Ms. White. The case is taken under submission. All rise. The court is adjourned until tomorrow morning at 10 o'clock a.m.